UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE | CHAPTER 13 |
| SUSAN E. O'BRIEN, | CASE NO. 8-18-78554-ast |
| | JUDGE: Alan S. Trust |
| DEBTOR. | |

**PLEASE TAKE NOTICE** that upon the annexed affirmation of the undersigned of the law firm of LOGS Legal Group LLP, attorneys for Nationstar Mortgage LLC d/b/a Mr. Cooper ("Movant") will move this Court as set forth below:

JUDGE: HON. Alan S. Trust

RETURN DATE & TIME: May 24, 2022 at 10:30 A.M.

COURTHOUSE: 290 Federal Plaza, Room 960, Central Islip, NY 11722

RELIEF REQUESTED: The proposed order will seek to vacate the automatic stay imposed by 11 U.S.C. § 362(a) generally described as 3501 Amen Cor, Riverhead, NY 11901, pursuant to 11 U.S.C. § 362(d)(1) based upon the total debt due to Movant, resulting in Movant's lack of adequate protection and 1301(a) with regard to the subject property, Movant also seeks to vacate the automatic stay imposed by 11 U.S.C. § 1301(a) pursuant to 11 U.S.C. § 1301(c)(3) with respect to the co-debtor/co-mortgagor on the subject mortgage to wit: Donna Danowski, Julie Conklin and Allison Mundy as to the subject property.

**PLEASE TAKE FURTHER NOTICE,** that answering affidavits, if any, to the relief requested, must be served upon and received by LOGS Legal Group LLP at their offices at 175 Mile Crossing Boulevard, Rochester, NY 14624 and filed with the Clerk of the United States Bankruptcy Court for the Eastern District of New York at 290 Federal Plaza, Room 960, Central Islip, NY 11722 no later than seven (7) days prior to the return date of this motion.

Dated:      April 22            , 2022
            Plainview, New York

                                             /s/Shari Barak
                                        Shari S. Barak
                                        LOGS Legal Group LLP
                                        Attorneys for Nationstar Mortgage LLC d/b/a Mr.
                                        Cooper
                                        175 Mile Crossing Boulevard
                                        Rochester, New York 14624
                                        Telephone: (585) 247-9000
                                        Fax: (585) 247-7380

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.**

TO:     SERVICE LIST

18-078095

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE | CHAPTER 13 |
| SUSAN E. O'BRIEN, | CASE NO. 8-18-78554-ast |
| | JUDGE: Alan S. Trust |
| DEBTOR. | |

**AFFIRMATION IN SUPPORT OF
ENTRY OF AN ORDER GRANTING
RELIEF FROM THE AUTOMATIC STAY**

The undersigned, an attorney at law duly admitted to practice before the Courts of the State of New York and the U.S. District Court for the Eastern District of New York, hereby affirms the following to be true under penalty of perjury:

1. I am a managing attorney with the law firm of LOGS Legal Group LLP, attorneys for Nationstar Mortgage LLC d/b/a Mr. Cooper ("Movant"), a secured creditor of Susan E. O'Brien ("Debtor"). As such, I am fully familiar with the facts and circumstances of this case.

2. I make this Affirmation in support of the within request for an Order Granting Relief from the automatic stay, for cause, pursuant to 11 U.S.C. § 362(d)(1) based upon Debtor's post-petition default, resulting in Movant's lack of adequate protection.

3. Furthermore, Movant will be irreparably harmed by the continuation of the co-debtor stay absent payments from the debtor and/or co-debtor. Accordingly, the co-debtor stay should be modified pursuant to U.S.C. § 1301(c)(3) and Movant should be permitted to proceed against the co-debtor.

18-078095

4.    Jurisdiction is conferred on this Court by the provisions of 28 U.S.C. § 1334.  This is a proceeding to terminate and annul the automatic stay and is therefore a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.    Movant is a secured creditor of the Debtor pursuant to a note executed by Susan E. O'Brien on September 25, 2017, whereby Susan E. O'Brien promised to repay the principal amount of $148,000.00 plus interest to Nationstar mortgage LLC d/b/a Mr. Cooper (the "Note").  To secure the repayment of the Note, Susan E. O'Brien, as to a life estate, Donna Danowski, Julie Conklin, and Allison Mundy, as to remainder granted Mortgage Electronic Registration Systems, Inc., as nominee for Nationstar mortgage LLC d/b/a Mr. Cooper a mortgage, which was duly recorded in the Suffolk County Clerk's Office on October 16, 2017 at M00022864 of Mortgages, page 472 (the "Mortgage," Note and Mortgage, collectively, as the "Loan"), encumbering real property located at 3501 Amen Corner, Riverhead, NY 11901 (the "Property").  The Mortgage was transferred to Nationstar Mortgage LLC d/b/a Mr. Cooper, and said transfer was memorialized by an Assignment of Mortgage executed on January 25, 2019 and recorded February 22, 2019 at M000023006, page 305.  Copies of the Note, Mortgage, and Assignment of Mortgage are annexed hereto as **Exhibit "A"**.

6.    Upon information and belief, the Debtor herein own(s) the Property.

7.    Debtor filed a petition for relief under Chapter 13 of the U.S. Bankruptcy Code on or about December 21, 2018. Debtor's Chapter 13 plan was confirmed by Order dated June 21, 2019. A copy of the Confirmation Order is attached as **Exhibit "B"**.

8.    Debtor has failed to make current mortgage payments due to Movant under the terms of the Loan.  As a result, the Mortgage remains due post-petition for the February 1, 2022 payment and each subsequent payment thereafter.

9.   The amount of delinquency due as of April 11, 2022 under the Mortgage is as follows:

| | |
|---|---:|
| 2 Defaulted Monthly Payments at $1,426.99 each (February 2022 through March 2022) | $2,853.98 |
| 1 Defaulted Monthly Payment at $1,450.06 each (April 2022 through April 2022) | $1,450.06 |
| Suspense | $(736.10) |
| Total Delinquencies | $3,567.94 |

10. A copy of the Relief from Stay-Real Estate and Cooperative Apartments ("Affidavit") is annexed hereto as **Exhibit "C"**.

11. Moreover, in view of the total debt due to Movant and in light of the Debtor's failure to make post-petition payments, Movant is no longer adequately protected.  The automatic stay must be vacated for cause pursuant to 11 U.S.C. § 362(d)(1).

12. As set forth in the Affidavit, as of April 11, 2022, the approximate debt due and owing to Movant equals $113,282.82.  The debt is accruing interest at a rate of 3.875% per annum.

13. Based upon the Debtor's Schedule D, the Property has an estimated fair value of approximately $325,000.00.  A copy of Debtor's Schedule D is annexed hereto as **Exhibit "D"**. As indicated in paragraph 12 herein above, the total debt to Movant equals $113,282.82.

14. For the reasons set forth herein above, Movant also seeks to vacate the automatic stay imposed by 11 U.S.C. 1301(c) pursuant to 11 U.S.C. 1301(c)(3) with respect to the co-debtor/co-mortgagor on the subject mortgage to wit: 3501 Amen Cor, Riverhead, NY 11901.

15. The Debtor, Co-Debtor, Debtor's Attorney, the Chapter 13 Trustee and the Office of the United States Trustee have each been duly served with the within Notice of Motion, Affirmation, Exhibits and proposed Order Vacating Stay, as more fully set forth in the annexed affidavit of mailing.

16. Upon the entry of the Order Granting Relief, the trustee shall cease to pay the securedd portion of claim number 5, filed by Movant.

17. No prior application has been made for the relief requested herein.

18. Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

19. Debtor Susan E. O'Brien executed a promissory note secured by a mortgage or deed of trust.  The promissory note is either made payable to Creditor or has been duly indorsed.  Creditor, directly or through an agent, has possession of the promissory note.  Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

18-078095

**WHEREFORE,** Movant respectfully requests an Order of this Court vacating the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1) and 1301(c)(3) as to the aforementioned Property; allowing Movant, its agents, assigns or successors in interest, leave to exercise its rights pursuant to the Note and Mortgage including but not limited to foreclose the Mortgage secured by the subject Property; and for such other, further and different relief as to this Court may seem just, proper and equitable.

Dated: _____April 22_____, 2022
        Plainview, New York

                                    /s/Shari Barak
                                    _____
                                    Shari S. Barak
                                    LOGS Legal Group LLP
                                    Attorneys for Nationstar Mortgage LLC d/b/a Mr. Cooper
                                    175 Mile Crossing Boulevard
                                    Rochester, New York 14624
                                    Telephone: (585) 247-9000
                                    Fax: (585) 247-7380

18-078095

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on ___April 22___, 2022, a copy of Notice of Motion, Affirmation in Support, Exhibits and Proposed Order Granting Relief from the Automatic Stay was caused to be deposited in an enclosed, properly addressed post-paid envelope, and served by ordinary U.S. Mail, postage prepaid, upon the following:

Debtor
Susan E. O'Brien
3501 Amen Corner
Riverhead, NY 11901

Co-Debtors
Donna Danowski
3501 Amen Corner
Riverhead, NY 11901

Julie Conklin
3501 Amen Corner
Riverhead, NY 11901

Allison Mundy
3501 Amen Corner
Riverhead, NY 11901

Attorney for Debtor
Cooper J. Macco, Macco & Corey, P.C.
2950 Express Drive South
Suite 109
Islandia, NY 11749

Trustee
Marianne DeRosa
Office of the Chapter 13 Trustee
100 Hericho Quadrangle, Ste. 127
Jericho, NY 11753

Dated: ___April 22___

/s/Shari Barak
Shari S. Barak
LOGS Legal Group LLP
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380
Email: logsecf@logs.com

18-078095

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE | CHAPTER 13 |
| SUSAN E. O'BRIEN, | CASE NO. 8-18-78554-ast |
| | JUDGE: Alan S. Trust |
| DEBTOR. | |

## ORDER GRANTING RELIEF FROM
## THE AUTOMATIC STAY

**ON** (Hearing Date), the Motion (the "Motion") of Nationstar Mortgage LLC d/b/a Mr. C

ooper, ("Movant") dated April 22, 2022, came before the Court, for relief from the

automatic stay with respect to the collateral known as 3501 Amen Cor, Riverhead, NY 11901.

This Court, having considered the evidence presented and the argument of the parties, and with

good cause appearing therefore, it is hereby

**ORDERED** that the automatic stay, effect pursuant to 11 U.S.C. § 362(a), is hereby

terminated pursuant to 11 U.S.C. § 362(d) and 1301(c)(3) as to Movant, its agents, assigns or

successors in interest, so that Movant, its agents, assigns or successors in interest, may take any

and all actions under applicable state law to exercise its remedies against the premises known as

3501 Amen Corner, Riverhead, NY 11901, and it is further

**ORDERED** the Co-Debtor stay in effect pursuant to 11 U.S.C. § 1301(a) is hereby

modified to allow Movant its successors and/or assigns to commence and/or continue with a

foreclosure action and eviction proceeding with regard to the Property; and its further

**ORDERED** that the Chapter 13 Trustee shall be served with a copy of the referee's

report of sale within (30) days of the report [if applicable], and shall be noticed with any surplus

monies realized from the sale of the Collateral,

18-078095

EXHIBIT "A"

Copy

MIN: ██████████     **NOTE**     Loan Number: ██████████

SEPTEMBER 25, 2017             RIVERHEAD             NEW YORK
[Date]                        [City]                [State]

3501 AMEN COR, RIVERHEAD, NEW YORK 11901
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $148,000.00           (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, A DELAWARE LIMITED LIABILITY COMPANY                              .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of        3.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

**(A)   Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on      NOVEMBER 1        , 2017    .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on   OCTOBER 1, 2032        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   P.O. BOX 650783, DALLAS, TEXAS 75265-0783

or at a different place if required by the Note Holder.

**(B)   Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,085.49              .

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Copy

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Copy

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Susan E. O'Brien_ _____ (Seal)
SUSAN E O'BRIEN                  -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

Pay to the order of

without recourse

By: _____

Nationstar Mortgage LLC, dba Mr. Cooper
Kenny Prak, Assistant Secretary

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

*[Sign Original Only]*

Loan Originator: Andrew Weinstein, NMLSR ID 1311556
Loan Originator Organization: Nationstar Mortgage LLC d/b/a Mr. Cooper, NMLSR
ID 2119

NEW YORK FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3233 1/01                    Page 3 of 3

*DocMagic eForms*
*www.docmagic.com*

Mortgage Recording Tax:

After Recording Return To:
NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER
ATTN: PC TRAILING DOCUMENTS
4000 HORIZON WAY
IRVING, TEXAS 75063
Loan Number: ██████████

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

**MIN:** ██████████                    **MERS Pho**█████████

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."** This document, which is dated   SEPTEMBER 25, 2017        , together with all Riders to this document, will be called the "Security Instrument."

**(B) "Borrower."**  SUSAN E. O'BRIEN, AS TO A LIFE ESTATE; DONNA DANOWSKI, JULIE CONKLIN, AND ALLISON MUNDY, AS TO REMAINDER

whose address is   3501 AMEN COR, RIVERHEAD, NEW YORK 11901

                                                    sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. MERS telephone number is (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

**(D) "Lender."**  NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER

will be called "Lender." Lender is a corporation or association which exists under the laws of DELAWARE

Lender's address is   8950 CYPRESS WATERS BLVD, DALLAS, TEXAS 75019

**(E) "Note."** The note signed by Borrower and dated   SEPTEMBER 25, 2017        , will be called the "Note." The Note shows that I owe Lender   ONE HUNDRED FORTY-EIGHT THOUSAND AND 00/100
                              Dollars (U.S. $ 148,000.00               )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by   OCTOBER 1, 2032        .

Section: 04.02        Block: 01.00        Lot(s)/Unit No(s).: 043.000

---

*DocMagic eForms*
*www.docmagic.com*

**(F)  "Property."**  The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(G)  "Loan."**  The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)  "Sums Secured."**  The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes called the "Sums Secured."

**(I)  "Riders."**  All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | |
|---|---|
| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Second Home Rider |
| ☒ Condominium Rider | ☐ Other(s) [specify] |

**(J)  "Applicable Law."**  All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K)  "Community Association Dues, Fees, and Assessments."**  All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L)  "Electronic Funds Transfer."**  "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)  "Escrow Items."**  Those items that are described in Section 3 will be called "Escrow Items."

**(N)  "Miscellaneous Proceeds."**  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.  A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O)  "Mortgage Insurance."**  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)  "Periodic Payment."**  The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q)  "RESPA."**  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

    (A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

    (B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

    (C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

    (A) To exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

    (B) To take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A)    The Property which is located at                 3501 AMEN COR             ,
                                              [Street]

                    RIVERHEAD                   , New York     11901     .
            [City, Town or Village]                                       [Zip Code]

This Property is in            SUFFOLK            County. It has the following legal description:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

(B)    All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C)    All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D)    All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E)    All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F)    All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01                               Page 3 of 16                                  DocMagic eForms
                                                                               www.docmagic.com

(G)   All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that:  (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender.  This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have.  I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country.  It also contains other promises and agreements that vary in different parts of the country.  My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1.   Borrower's Promise to Pay.**  I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note.  I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency.  If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument.  Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due.  If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights.  Lender is not obligated to apply such lesser payments when it accepts such payments.  If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current.  If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me.  In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure.  No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2.   Application of Borrower's Payments and Insurance Proceeds.**  Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01                                              Page 4 of 16                                              DocMagic *eForms*
www.docmagic.com

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3.    Monthly Payments For Taxes And Insurance.**

**(a)  Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could

require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) **Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) **Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. **Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to

disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**
**(a) Maintenance and Protection of the Property.**
I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**
Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01                    Page 8 of 16                    DocMagic *eForms*
www.docmagic.com

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or alter that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by

contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make

my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and**

under this Security Instrument. **Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as **"Foreclosure and Sale."** In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 15 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)
SUSAN E O'BRIEN                 -Borrower

_____ (Seal)
DONNA DANOWSKI                  -Borrower

_____ (Seal)
JULIE CONKLIN                   -Borrower

_____ (Seal)
ALLISON MUNDY                   -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

———————————— [Space Below This Line For Acknowledgment] ————————————

State of NEW YORK _____ )
                              ) ss.
County of SUFFOLK _____ )

On the __25__ day of _September_ _____, in the year _2017_ , before me,

the undersigned, personally appeared __SUSAN E O'BRIEN AND DONNA DANOWSKI AND__

__JULIE CONKLIN AND ~~ALLISON MUNDY~~__

————————————————————————————————— ,

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

```
┌──────────────────────────────────┐
│         LENOR CAPRIA             │
│  Notary Public - State of New York│
│        NO. 01CA6107478           │
│    Qualified in Suffolk County   │
│  My Commission Expires 4/5/2020  │
└──────────────────────────────────┘
```

Signature and Office of Person Taking Acknowledgment

_Lenor Capria_
Print or Type Name

(Seal, if any)

Tax Map Information No.: ████████████████████

Loan Originator: Andrew Weinstein, NMLSR ID 1311556
Loan Originator Organization: Nationstar Mortgage LLC d/b/a Mr. Cooper, NMLSR ID 2119
NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01                    Page 16 of 16                    *DocMagic eForms*
                                                                    www.docmagic.com

**UNIFORM ACKNOWLEDGMENT**
**(For Use on Documents Being Acknowledged Outside of New York State)**

State of _FL_

County of _Pinellas_ } SS:

On the _28_ day of _Sept_ in the year _2017_ before me, the undersigned, a Notary Public in and for said State, personally appeared _Allison Mundy_ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the _Dunedin, FL_ .
(Insert the city or other political subdivision and the State or county or other place the acknowledgment was taken)

_____
Notary Public

JENNIFER L. DEEM
Notary Public – State of Florida
Commission # FF 991804
My Comm. Expires Jun 23, 2018

**UNIFORM ACKNOWLEDGMENT**
**(For Use on Documents Being Acknowledged Outside of New York State)**

State of _____

County of _____ } SS:

On the _____ day of _____ in the year _____ before me, the undersigned, a Notary Public in and for said State, personally appeared _____ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the _____ .
(Insert the city or other political subdivision and the State or county or other place the acknowledgment was taken)

_____
Notary Public

Loan Number: ██████

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 25th  day of            SEPTEMBER, 2017         ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to  NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, A DELAWARE
LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3501 AMEN COR, RIVERHEAD, NEW YORK 11901
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

Sunken Pond Estates
[Name of Condominium Project]

(the "Condominium Project").  If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds
and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.**  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.  Condominium Obligations.**  Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents.  The "Constituent Documents" are the: (i) Declaration or
any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv)
other equivalent documents.  Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

**B.  Property Insurance.**  So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender
and which provides insurance coverage in the amounts (including deductible levels), for the periods, and
against loss by fire, hazards included within the term "extended coverage," and any other hazards, including,
but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives
the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for
property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property
insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided
by the Owners Association policy.
    What Lender requires as a condition of this waiver can change during the term of the loan.

---

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
SUSAN E O'BRIEN              -Borrower

_____ (Seal)
DONNA DANOWSKI              -Borrower

_____ (Seal)
JULIE CONKLIN              -Borrower

_____ (Seal)
ALLISON MUNDY              -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

Loan #       :  ██████████████

# Exhibit A

LEGAL DESCRIPTION

The following described property:

Situated in the Town of Riverhead, Suffolk County, and state of New York

All that certain piece or parcel of real property, with the improvements therein contained, situate and being a part of sunken pond estates condominium, section III, county of Suffolk and state of New York, known and designated as unit no. 3501 together with a 1/84 undivided interest in the common elements of the condominium hereinafter described as the same is defined in the declaration of condominium hereinafter referred to.

The real property above described is a unit shown on the plans of a condominium prepared and certified by young & young, professional engineer, and filed in the office of the clerk of the county of Suffolk on 12/29/04 as map no. 352, defined in the declaration of condominium entitled, sunken pond estates condominium, section III made by sunken pond estates, Inc., under article 9-b of the New York real property law dated 12/27/04 recorded in the office of the clerk of the county of Suffolk on the 29 day of December, 2004 in liber 12362 of conveyances, at page 811 covering the property therein described. The land area of the property is described as set forth in schedule A annexed hereto and made a part hereof.

All that certain plot, piece or parcel of land, situate, lying and being at Riverhead, town of riverhead, county of Suffolk and state of new York, bounded and described as follows:

Beginning at a point on the easterly side of old farm road, said point being the southwesterly corner of lot 121 on subdivision map "bear estates" file no. 9095;

Running thence along the easterly side of old farm road and along the terminus of old farm road the following three (3) courses and distances:

1) Along the arc of a curve to the left having a radius of 527.50 feet a distance of 32.58 feet;
2) Along the arc of a curve to the right having a radius of 25.00 feet a distance of 21. 60 feet;

3) Along the arc of a curve to the left having a radius of 60.00 feet a distance of 228.18 feet to lot 115, subdivision, bear estates" ;

Running thence along lot 115 and lot 114, subdivision, "bear estates" the following two (2) courses and distances:

1) South 32 degrees 45 minutes 20 seconds East, 50.15 feet;
2) South 57 degrees 29 minutes 40 seconds west, 129.31 feet to a point;


Running thence through land now or formerly sunken pond estates, Inc. The following eight (8) courses and distances:

1) North 32 degrees 30 minutes 20 seconds west 220.98 feet;
2) North 70 degrees 46 minutes 31 seconds west 209.51 feet;
3) South 28 degrees 47 minutes 40 seconds west 134. 77 feet;
4) North 79 degrees 21 minutes 46 seconds west 50.15 feet;
5) South 15 degrees 32 minutes 15 seconds west, 48.53 feet;
6) Along the arc of a curve to the right having a radius of 390.00 feet a distance of 361.44 feet;
7) Along the arc of a curve to the left having a radius of 149.25 feet a distance of 241. 28 feet;
8) South 56 degrees 58 minutes 19 seconds west 107.84 feet to land now or formerly of Dorothy E. Muma and Edwin F. Tuccio;

Thence north 33 degrees 01 minutes 41 seconds west along land now or formerly of Dorothy E. Muma and Edwin F. Tuccio 191.35 feet to land now or formerly woods at cherry creek, LLC;

Thence along land now or formerly woods at cherry creek, LLC the following five (5) courses and distances:

L) North 44 degrees 43 minutes 40 seconds east, 518.30 feet;
2) North 05 degrees 40 minutes 09 seconds west, 1,039.29 feet;
3) North 58 degrees 06 minutes 35 seconds east, 304.13 feet;
4) South 35 degrees 14 minutes 33 seconds east, 1,361.59 feet;
5) South 33 degrees 55 minutes 06 seconds east, 36.17 feet to subdivision, "bear Estates", Suffolk county file no. 9095;

Thence south 56 degrees 04 minutes 54 seconds west along lot 121 subdivision, "bear estates" 153.83 feet to the easterly side of old farm road, the point or place of beginning.

Assessor's Parcel No: ███████████████





## SUFFOLK COUNTY CLERK
### RECORDS OFFICE
### RECORDING PAGE

Type of Instrument: ASSIGNMENT OF MORTGAGE  Recorded: 2/22/2019
Number of Pages:  2        At:   3:19:39 PM
Receipt Number:  ████████████*ELECTRONICALLY RECORDED*

                  LIBER:  M00023006
                  PAGE:  305

District:     Section:    Block:     Lot:
0600       064.02    01.00     043.000
      EXAMINED AND CHARGED AS FOLLOWS

Received the Following Fees For Above Instrument
            Exempt           Exempt

| | | | | | |
|---|---|---|---|---|---|
| Page/Filing | $10.00 | NO | Handling | $20.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Notation | $0.50 | NO | Cert.Copies | $0.00 | NO |
| RPT | $200.00 | NO | | | |
| RPT-MTGFEE | $300.00 | NO | Fees Paid | $550.50 | |

### THIS PAGE IS A PART OF THE INSTRUMENT
### THIS IS NOT A BILL

Judith A. Pascale
County Clerk, Suffolk County

| Number of pages | 2 |
|---|---|

RECORDED
2/22/2019 3:19:42 PM
JUDITH A. PASCALE
CLERK OF
SUFFOLK COUNTY
L M00023006
P 305

**This document will be public record. Please remove all Social Security Numbers prior to recording.**

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

| 3 | FEES |
|---|---|

| | |
|---|---|
| Page / Filing Fee | 10.00 |
| Handling | 20. 00 |
| TP-584 | |
| Notation 1N | 0.50 |
| EA-52 17 (County) | Sub Total 30.50 |
| EA-5217 (State) | |
| R.P.T.S.A. | 200.00 |
| Comm. of Ed. | 5. 00 |
| Affidavit | |
| Certified Copy | |
| NYS Surcharge | 15. 00 |
| | Sub Total 520.00 |
| Other | Grand Total 550.50 |
| RPT-MTGFEE | 300.00 |

Mortgage Amt. _____ ____
1. Basic Tax _____ ____
2. Additional Tax _____ ____
Sub Total _____ ___
Spec./Assit.
    or
Spec. /Add. _____ ____
TOT. MTG. TAX _____ ____
    Dual Town _____ Dual County____
    Held for Appointment _____
Transfer Tax _____ ____
Mansion Tax _____ ____
The property covered by this mortgage is or will be improved by a one or two family dwelling only.
    YES _____ or NO _____
If NO, see appropriate tax clause on page # _____ of this instrument.

| 4 | Dist. | Section | Block | Lot | 5 | Community Preservation Fund |
|---|---|---|---|---|---|---|

Real Property Tax Service Agency Verification

Consideration Amount $ _____

CPF Tax Due $ _____

Improved _____
Vacant Land _____
TD _____
TD _____
TD _____

| 6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address |
|---|---|

**RECORD & RETURN TO:**

**Shapiro, DiCaro amp; Barak, LLC**
**175 Mile Crossing Blvd.**
**Rochester NY 14624**

Mail to: Judith A. Pascale, Suffolk County Clerk
310 Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

| 7 | **Title Company Information** |
|---|---|
| | Co. Name |
| | Title # |

| 8 | **Suffolk County Recording & Endorsement Page** |
|---|---|

This page forms part of the attached **Assignment** made by:
                                    (SPECIFY TYPE OF INSTRUMENT)

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

TO

In the TOWN of **RIVERHEAD**

In the VILLAGE

or HAMLET of

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

12-0104.10/08bk

(over)

If the document you've just recorded is your <u>SATISFACTION OF MORTGAGE</u>, please be aware of the following:

If a portion of your monthly mortgage payment included your property taxes, <u>*you will now need to contact your local Town Tax Receiver so that you may be billed directly for all future property tax statements.</u>

Local property taxes are payable twice a year:  on or before January 10th and on or before May 31st. Failure to make payments in a timely fashion could result in a penalty.

**Please contact your local Town Tax Receiver with any questions regarding property tax payment.**

Babylon Town Receiver of Taxes
200 East Sunrise Highway
North Lindenhurst, N.Y.  11757
(631) 957-3004

Riverhead Town Receiver of Taxes
200 Howell Avenue
Riverhead, N.Y.  11901
(631) 727-3200

Brookhaven Town Receiver of Taxes
One Independence Hill
Farmingville, N.Y.  11738
(631) 451-9009

Shelter Island Town Receiver of Taxes
Shelter Island Town Hall
Shelter Island, N.Y.  11964
(631) 749-3338

East Hampton Town Receiver of Taxes
300 Pantigo Place
East Hampton, N.Y.  11937
(631) 324-2770

Smithtown Town Receiver of Taxes
99 West Main Street
Smithtown, N.Y.  11787
(631) 360-7610

Huntington Town Receiver of Taxes
100 Main Street
Huntington, N.Y.  11743
(631) 351-3217

Southampton Town Receiver of Taxes
116 Hampton Road
Southampton, N.Y.  11968
(631) 283-6514

Islip Town Receiver of Taxes
40 Nassau Avenue
Islip, N.Y.  11751
(631) 224-5580

Southold Town Receiver of Taxes
53095 Main Street
Southold, N.Y.  11971
(631) 765-1803

Sincerely,

*Judith A. Pascale*

Judith A. Pascale
Suffolk County Clerk

12-9104. 06/06hd

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX  75019

---

## CORPORATE ASSIGNMENT OF MORTGAGE

Suffolk, New York
**SELLER'S SERVICING** ███████ "O'BRIEN"

**MIN #** ████████ SIS #: 1-888-679-6377

Date of Assignment: January 25th, 2019
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, ITS SUCCESSORS AND ASSIGNS at Lender's Address: 8950 CYPRESS WATERS BLVD, DALLAS, TX  75019
Assignee: NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER at 8950 CYPRESS WATERS BLVD., COPPELL, TX  75019
Executed By: SUSAN E. O'BRIEN, AS TO A LIFE ESTATE; DONNA DANOWSKI, JULIE CONKLIN, AND ALLISON MUNDY, AS TO REMAINDER  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER
Date of Mortgage: 09/25/2017 Recorded:  10/16/2017  in Book/Reel/Liber: M00022864 Page/Folio: 472 as Instrument No.: DI026615  In the County of Suffolk, State of New York.

Section/Block/Lot 0600/064.02/01.00/043.000

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC has a physical address at 1901 E Voorhees Street, Suite C, Danville, IL 61834 and a mailing address at P.O. BOX 2026, FLINT, MI 48501-2026

Property Address: 3501 AMEN COR, RIVERHEAD, NY 11901

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $148,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, ITS SUCCESSORS AND ASSIGNS
On January 25th, 2019

By:_____
MOHAMED HAMEED, Vice-President

STATE OF Texas
COUNTY OF Dallas

On the 25th day of January in the year 2019 before me, the undersigned, personally appeared MOHAMED HAMEED, Vice-President, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the County of Dallas, State of Texas.

WITNESS my hand and official seal,

_____
DANIELA HORVATH
Notary Expires: 01/27/2020  #128862890
Dallas, Texas

> DANIELA HORVATH
> Notary Public, State of Texas
> Comm. Expires 01-27-2020
> Notary ID 128862890

(This area for notarial seal)

EXHIBIT "B"

tmd3574/kfw

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X      Chapter 13
IN RE:

                                                              Case No. 8-18-78554-LAS
SUSAN E. O'BRIEN,
                                                              ORDER CONFIRMING PLAN
                                                                  Hon. Louis A. Scarcella

                                      Debtor.
-------------------------------------------------------X

     The Debtor's Chapter 13 Plan dated June 19, 2019 (the "Plan") or a summary thereof, having been transmitted to all creditors; and the deposit required by the Plan and 11 U.S.C. Section 1326 having been made to the Trustee; and it having been determined after notice and a hearing that the Plan complied with the provisions of 11 U.S.C. Section 1325 and with other applicable provisions of this title;

     IT IS ORDERED, that:

     1. The Debtor's Plan filed with the Clerk's Office on June 19, 2019 as docket number 25 is hereby confirmed.

     2. The percentage stated in the Plan for payments to unsecured creditors shall be paid to all unsecured creditors provided all proofs of claim are timely filed and allowed. If all proofs of claims are not filed as scheduled, the unsecured creditors who have filed claims shall be paid pro rata, but in no event shall they receive more than one hundred (100%) percent of their claim as filed.

     3. Immediately after the entry of this Order and every month thereafter, the Debtor shall pay to the Trustee Marianne DeRosa, by bank check, certified check or money order, at P.O. Box 2178, Memphis, TN 38101-2178 all sums as required in the Plan.

     4. The Court shall retain jurisdiction over the Debtor's real property pursuant to 11 U.S.C. Section 1327. By virtue thereof, the Debtor shall not sell, encumber or hypothecate said real property without prior written approval of this Court.

     5. Throughout the term of the Plan, the Debtor is enjoined from incurring post-petition debt over $2,500.00 without prior written consent of the Chapter 13 Trustee or this Court.



**Dated: June 21, 2019**
   **Central Islip, New York**

_Louis A. Scarcella_
**Louis A. Scarcella**
**United States Bankruptcy Judge**

EXHIBIT "C"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE                                             CHAPTER 13

SUSAN E. O'BRIEN,                                 CASE NO. 8-18-78554-ast

                                                  JUDGE: Alan S. Trust

             DEBTOR.

---

RELIEF FROM STAY – REAL ESTATE AND
COOPERATIVE APARTMENTS

### BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT:  3501 Amen Cor, Riverhead, NY 11901

2. LENDER NAME:  Nationstar Mortgage LLC d/b/a Mr. Cooper

3. MORTGAGE DATE:  09/25/2017

4. POST-PETITION PAYMENT ADDRESS:  P.O. Box 619094, Dallas, TX 75261-9741

### DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF APRIL 11, 2022: $113,282.82.
(*THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.*)

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $325,000.00

7. SOURCE OF ESTIMATED MARKET VALUE:  Debtor Schedules

18-078095

## STATUS OF THE DEBT AS OF THE PETITION DATE

8. DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF THE PETITION DATE:

| | | | |
|---|---|---|---|
| A. | TOTAL: | $ | 136,911.14 |
| B. | PRINCIPAL: | $ | 137,393.90 |
| C. | INTEREST: | $ | 306.31 |
| D. | ESCROW (TAXES AND INSURANCE): | $ | 0.00 |
| E. | FORCED PLACED INSURANCE EXPENDED BY MOVANT: | $ | 0.00 |
| F. | PRE-PETITION ATTORNEYS' FEES CHARGED TO DEBTOR(S): | $ | 0.00 |
| G. | PRE-PETITION LATE FEES CHARGED TO DEBTOR(S): | $ | 0.00 |

9. CONTRACT INTEREST RATE: 3.875%

*(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: __N/A__.)*

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:

Suspense: $789.07

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: __N/A__.)*

## AMOUNT OF POST-PETITION DEFAULT AS OF THE MOTION FILING DATE

11. DATE OF RECEIPT OF LAST PAYMENT: 02/15/2022

12. NUMBER OF PAYMENTS DUE: 3 PAYMENTS.

18-078095

13. POST-PETITION PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 2/1/22-3/1/22 | $1,426.99 per month | $    0.00 | $    0.00 | $    0.00 | $    0.00 | $    0.00 |
| 04/01/22-04/01/2022 | $1,450.06 per month | $    0.00 | $    0.00 | $    0.00 | $    0.00 | $    0.00 |
| TOTALS | $    4,304.04 | $    0.00 | $    0.00 | $    0.00 | $    0.00 | $    0.00 |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

    A. TOTAL:     $_____0.00

    B. ATTORNEY'S FEES IN CONNECTION WITH THIS MOTION:     $_____0.00

    C. FILING FEE IN CONNECTION WITH THIS MOTION:     $_____0.00

    D. OTHER POST-PETITION ATTORNEYS' FEES:     $_____0.00

    E. POST-PETITION INSPECTION FEES:     $_____0.00

    F. POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES:     $_____0.00

    G. FORCED PLACED INSURANCE EXPENDED BY MOVANT:     $_____0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT:     $_____736.10

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM; STATE THE EXHIBIT NUMBER HERE: __N/A__.)*

18-078095

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY.  FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT A.)

(2)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT A.)

(3)    COPIES OF DOCUMENTS ESTABLISHING THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT ___.)

18-078095

## DECLARATION AS TO BUSINESS RECORDS

I, _Mary Gracia_ (cooper), THE _Assistant Secretary_ OF _Nationstar Mortgage LLC d/b/a Mr. Cooper_, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT _Lewisville, TX_
ON THIS _20_ DAY OF _April_, 20_22_

Mary Gracia
Assistant Secretary of Nationstar Mortgage LLC
d/b/a Mr. Cooper
Affiant

|  |  |
|---|---|
| NAME: | _Mary Grac_ |
| TITLE: | |
| MOVANT: | Nationstar Mortgage LLC d/b/a Mr. Cooper |
| STREET ADDRESS: | 8950 Cypress Waters Blvd |
| CITY, STATE AND ZIP CODE: | Coppell, TX 75019 |

## DECLARATION

I, _Mary Gracia_ (cooper), THE _Assistant Secretary_ OF _Nationstar Mortgage LLC d/b/a Mr. Cooper_, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT _Lewisville, TX_
ON THIS _20_ DAY OF _April_, 20_22_

Mary Gracia
Assistant Secretary of Nationstar Mortgage LLC
d/b/a Mr. Cooper
Affiant

|  |  |
|---|---|
| NAME: | _Mary Grac_ |
| TITLE: | |
| MOVANT: | Nationstar Mortgage LLC d/b/a Mr. Cooper |
| STREET ADDRESS: | 8950 Cypress Waters Blvd |
| CITY, STATE AND ZIP CODE: | Coppell, TX 75019 |

18-078095

EXHIBIT "D"

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Susan E. O'Brien** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK |
| Case number | _____ |
| (if known) | |

☐ Check if this is an
   amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

| | Column A | Column B | Column C |
|---|---|---|---|
| **2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.  If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name. | **Amount of claim** Do not deduct the value of collateral. | **Value of collateral that supports this claim** | **Unsecured portion** If any |

| | | |
|---|---|---|
| **2.1** **Mr. Cooper** | Describe the property that secures the claim: | $138,682.16    $325,000.00    $0.00 |
| Creditor's Name | 3501 Amen Corner Riverhead, NY 11901  Suffolk County | |

**8950 Cypress Waters Blvd. Coppell, TX 75019**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **Mortgage**

| | | |
|---|---|---|
| Date debt was incurred    **2017** | Last 4 digits of account number    **1755** | |

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | $138,682.16 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $138,682.16 |

**Part 2:    List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy